UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY C. COOLEY, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>CALIFORNIA STATEWIDE LAW ENFORCEMENT ASSOCIATION, et al.,<br><br>    Defendants. | No. 2:18-cv-02961-JAM-AC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

Terry Cooley ("Plaintiff" or "Mr. Cooley") seeks to enjoin the California State Law Enforcement Association ("CSLEA" or "the Union") from (1) refusing to accept Mr. Cooley's resignation from union membership and (2) continuing to collect money from Mr. Cooley's paycheck. Mot., ECF No. 11, at 1. CSLEA and the California Association of Law Enforcement Employees (with CSLEA, the "Union Defendants"), oppose the motion. Opp'n, ECF No. 24. The Court held a hearing on the motion on January 22, 2019.

1

For the reasons set forth below, and after consideration of the arguments made during the hearing and all papers filed in support of and in opposition to the motion, the Court DENIES Plaintiff's motion.

I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff Terry Cooley works as a police officer for Cal Expo. Compl., ECF No. 1, ¶ 9. Mr. Cooley enrolled as a member the CSLEA union upon beginning his employment with Cal Expo in June 2007. Id. ¶ 11. Mr. Cooley believes that he was automatically enrolled in union membership, though Mr. Cooley acknowledges "he may have signed a union membership card in the stack of paperwork he was given at the outset of his employment." Id. However, Mr. Cooley alleges he "is certain" that he was never informed, at the start of his employment, of his right to decline union membership and pay fair-share service fees (or agency fees) instead of dues. Id. Mr. Cooley only continued as a member, he alleges, rather than leave the Union because the financial difference between paying nonmember fair-share service fees and membership dues was "so minimal as to be immaterial from a financial standpoint." Id. ¶ 13. Nevertheless, Mr. Cooley alleges he opposes continued payment of dues to CSLEA because he disapproves of CSLEA's representation of him and feels there is no benefit derived from his membership in the Union. Id. ¶ 12.

By letter dated July 18, 2018, Mr. Cooley purported to resign his union membership and stated his desire to no longer pay dues or fees to the Union. Compl. ¶¶ 20-21; Cooley Letter, ECF No. 11-2. Mr. Cooley's decision to submit the letter was

prompted by the Supreme Court's decision in <u>Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31</u>, 138 S. Ct. 2448 (2018) ("<u>Janus</u>"). Compl. ¶¶ 20-21; Cooley Letter. On July 30, 2018, CSLEA responded to Mr. Cooley saying it was unable to cancel his current membership until the next window period for changes in membership status, which would not begin until June 1, 2019. Compl. ¶ 22; CSLEA Letter, ECF No. 11-3. CSLEA directed Mr. Cooley to Article 3.1.A.1 of the collective bargaining agreement between the State of California and CSLEA covering Bargaining Unit 7 (the "CBA") which states "any employee may withdraw from CSLEA by sending a signed withdrawal letter to CSLEA within thirty (30) calendar days prior to the expiration of this Contract. Employees who withdraw from CSLEA under this provision shall be subject to paying a CSLEA Fair Share fee as provided above." Compl. ¶ 23; CSLEA Letter; CBA, ECF No. 11-1.

Despite his purported resignation, the Union continued deducting membership dues from Mr. Cooley's paycheck. Compl. ¶ 24. In response, Mr. Cooley emailed Cal Expo Human Resources on September 5, 2018 stating he had resigned his membership from CSLEA and, while CSLEA had refused to accept his resignation until June 2019, he was requesting that Cal Expo immediately stop diverting any part of his paycheck to union dues. Id. ¶ 25; Cooley Email, ECF No. 11-5. Mr. Cooley alleges the Cal Expo Human Resources department, as of the filing of the Complaint, had not acknowledged or responded to his email. Compl. ¶ 26.

Mr. Cooley filed suit on November 13, 2018, bringing three claims: (1) "Unconstitutional Agency Shop," (2) "Unconstitutional Garnishment of Wages," and (3) "Failure to Secure Freely Given

3

and Fully Informed Consent." See Compl. Mr. Cooley purports to sue all defendants under 42 U.S.C. § 1983 and the Declaratory Judgment Act, and to sue the Union Defendants under the state-law torts of conversion, trespass to chattels, and replevin for unlawful seizure of personal property. Compl. ¶¶ 43-44. Mr. Cooley further seeks to certify a separate class for each of his three claims. Compl. ¶¶ 17, 34, 41.

The same day he filed his Complaint, Mr. Cooley also filed this Motion for Preliminary Injunction. Notice of Mot., ECF No. 6. Mr. Cooley seeks to enjoin CSLEA from refusing to accept Mr. Cooley's membership resignation and from deducting membership dues from Mr. Cooley's paycheck. Mot., ECF No. 11, at 1. Mr. Cooley subsequently withdrew his initial request to enjoin the enforcement of Section 1157.12(b) of the California Government Code and his request that the preliminary injunction be issued on a class-wide basis. ECF No. 35, at 1-2. The Union Defendants oppose the motion. Opp'n, ECF No. 24.

## II. OPINION

### A. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter, 555 U.S., at 20.

B.  Likelihood of Success on the Merits

For Mr. Cooley's claims to succeed, this Court is required to find CSLEA is violating Mr. Cooley's First Amendment rights as explained in Janus, without a valid contractual waiver.

In Janus, the Supreme Court held: "Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay.  By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed.  Rather, to be effective, the waiver must be freely given and shown by 'clear and compelling' evidence.  Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met."  Janus, 138 S. Ct., at 2486 (internal citations omitted).

1.  Rights Under *Janus*

First, Mr. Cooley argues Janus held that public employees have a constitutional right to resign their union membership at their discretion and effective immediately, and any restriction on that right, like Article 3.1.A.1. of the CBA, is unconstitutional.  Mot. at 4.  But that is not the holding of Janus, nor does Janus apply to the situation at bar.  The plaintiff in Janus was not a union member, never agreed to be a union member, and never affirmatively agreed – beyond by virtue of his public employment – to have any union-related fees deducted from his paycheck.  Id. at 2461.  Put simply, the relationship between unions and their voluntary members was not at issue in Janus.

Here, unlike in Janus, Mr. Cooley agreed to become a dues-paying member of the Union. On December 17, 2013, Mr. Cooley initialed and submitted an electronic CSLEA membership application, agreeing as follows: "I elect to become a member of CSLEA and the affiliate organization for my classification and department . . . I hereby authorize deduction from my salary of CSLEA/Affiliate dues. I understand that this membership will become effective the first month following the date of submission. Per the Unit 7 contract and State law, there are limitations on the time period in which an employee can withdraw as a member . . ." 2013 Membership Application, ECF No. 24-2, at Exhibit A. Mr. Cooley's alleged harm stems from his previous consent to pay union membership dues, not from a compulsory nonmember agency fee. Thus, on its face, Janus does not provide the relief Mr. Cooley seeks.

Indeed, the Supreme Court has made clear that a person can contract away and waive his or her First Amendment rights. Cohen v. Cowles Media Co., 501 U.S. 663, 672 (1991) ("[T]he First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law."). And Mr. Cooley affirmed his understanding of the membership withdrawal limitations in the 2013 Membership Application. Janus does not invalidate such agreements.

This Court therefore does not find Mr. Cooley likely to succeed on his claim that the refusal to immediately honor his resignation, as required by the CBA, violates his First Amendment rights under Janus.

///

2.  <u>Valid Contract and Waiver</u>

Second, Mr. Cooley contends he is either not a union member at all or not constrained by the CBA's restrictions because he has not executed a contractually valid waiver that meets the Supreme Court's standards in <u>Janus</u>. Reply, ECF No. 29, at 2-14. This Court is not persuaded by Mr. Cooley's arguments that the 2013 Membership Application is not a valid contract and that he is not subject to the provisions of the collective bargaining agreement for the union to which he belongs.

Nor can Mr. Cooley now decide to simply withdraw and revoke his assent to membership in violation of his prior agreement. Mr. Cooley's reliance on <u>Penn Cork</u>, a 1967 Second Circuit case, for this argument is misplaced. Reply at 6-8 (discussing <u>NLRB v. Penn Cork & Closures, Inc.</u>, 376 F.2d 52 (2d Cir. 1967) (Friendly, J.)). <u>Penn Cork</u> is not binding on this Court and easily distinguished because CSLEA, unlike the union in <u>Penn Cork</u>, has not removed the withdrawal limitation provision for dues-paying members from its collective bargaining agreement.

Mr. Cooley knowingly agreed to become a dues-paying member of the Union, rather than an agency fee-paying nonmember, because the cost difference was minimal. That decision was a freely-made choice.  The notion that Mr. Cooley may have made a different choice in 2013 (or before) if he knew the Supreme Court would later invalidate public employee agency fee arrangements does not void his previous, knowing agreement.

And while Mr. Cooley is correct the collective bargaining agreement in effect at the time of the 2013 Membership Application has since expired, Mr. Cooley could have properly

7

resigned from the Union in June 2016 (during the CBA-provided window), but he did not do so and thus, in effect, chose to remain in the Union. Under the current CBA, Mr. Cooley can resign as of June 1, 2019 and CSLEA has indicated it would honor his resignation at that time. Until then, Mr. Cooley remains obligated to pay the union dues to which he agreed.

Therefore, this Court finds Mr. Cooley is not likely to succeed on the merits of his First Amendment claim as underpinned by an invalid contract or invalid waiver of rights.

### 3. Conclusion

In addition, this Court draws attention to two recent district court rulings which denied motions for preliminary injunctions under similar circumstances – where union members, bound by contractual withdrawal limitation provisions, sought to immediately resign and stop paying dues in the wake of Janus. See Belgau v. Inslee, No. 18-5620 RJB, 2018 WL 4931602 (W.D. Wash. Oct. 11, 2018); see also Smith v. Superior Court, Cty. of Contra Costa, No. 18-CV-05472-VC, 2018 WL 6072806 (N.D. Cal. Nov. 16, 2018). And in a non-binding opinion, the Ninth Circuit also suggested its approval of this outcome. See Fisk v. Inslee, No. 17-35957, 2019 WL 141253 (9th Cir. Jan. 9, 2019). This Court is not persuaded by Mr. Cooley's attempt to distinguish these cases, and finds the opinions instructive.

Thus, this Court finds Mr. Cooley has failed to establish a likelihood of success on the merits.

### C. Irreparable Harm

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

Elrod v. Burns, 427 U.S. 347, 373 (1976). And in the Ninth Circuit, a party seeking preliminary injunctive relief on a First Amendment claim can establish irreparable harm "by demonstrating the existence of a colorable First Amendment claim." Warsoldier v. Woodford, 418 F.3d 989, 1001-02 (9th Cir. 2005). But, as discussed above, Mr. Cooley has not presented a colorable First Amendment claim. Even still, this Court is not persuaded by Mr. Cooley's contention that any union-related deduction of funds from his paycheck constitutes irreparable harm where, as here, since the purported resignation the funds have been placed into a separate interest-bearing escrow account and not used in any way by the Union.

Consequently, this Court finds Mr. Cooley has failed to establish that he is likely to suffer irreparable harm absent an injunction.

### D. Balance of the Equities and the Public Interest

This Court recognizes that "it is always in the public interest to prevent the violation of a party's constitutional rights" and the loss of such rights would tip the equities in a party's favor. See Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012). But, as with the irreparable harm element, findings on these elements depend on this Court's view of the merits. As discussed, this Court does not find that Mr. Cooley is likely to succeed on the merits of his First Amendment claim.

Without an attendant violation of the moving party's constitutional rights, this Court does not find the balance of equities or public interest weigh in favor of the injunction. Instead, this Court is persuaded by the Union Defendants'

arguments that an injunction would impair the administration of the union by subjecting it to oft-changing payrolls, prevent the union from confidently making long-term financial commitments, and allow the breach of valid contracts.

Thus, this Court finds the balance of equities weigh in favor of the Union Defendants and that an injunction is not in the public interest.

E.   Conclusion

Mr. Cooley has failed to establish any of the four elements required for the issuance of a preliminary injunction. Winter, 555 U.S., at 20.

III.   ORDER

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Preliminary Injunction (ECF No. 6).

IT IS SO ORDERED.

Dated: January 25, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE